## Franklin Associates v. F-M Oil Co., Inc.

*David L. Shenkle,* for plaintiff.
*George W. Tracy,* for defendant.

BECKERT, *P.J.,* December 30, 1981 — In October 1978, plaintiff, Franklin Associates, Inc., hereinafter referred to as "Franklin," instituted suit against defendants, F-M Oil Company, Inc., hereinafter referred to as "F-M," and Robert J. Finney, hereinafter referred to as "Finney," in trespass and assumpsit.

Franklin had entered into an agreement of sale calling for it to purchase certain real estate owned by F-M and located in Doylestown Borough, Bucks County, Pa. At the time that agreement was executed, those premises were subject to a lease agreement, under which an individual named Kurt Harnik, hereinafter referred to as "Harnik," was authorized to utilize the premises as a gasoline service station. At the time of settlement pursuant to that agreement of sale, the premises were con-

veyed to plaintiff under and subject to that lease agreement. The tenant refused to vacate the premises at the end of the then-current lease term, basing his refusal on the protection to which he claimed to be entitled under the Gasoline, Petroleum Products and Motor Vehicle Accessories Act of November 26, 1975, P.L. 454, 73 P.S. §202-1 et seq.

As a result of its inability to secure possession of the service station at the end of the lease term which was in effect at the time of settlement, plaintiff-purchaser now attempts to recover damages from both the individual and corporate defendants on the basis of alleged misrepresentations as to the terminability of the lease. Defendants, on the other hand, deny the existence of any franchise relationship which would justify the tenant's holding over after the expiration of the lease term, and further deny having made any misrepresentation, as to termination of that lease agreement.

After a bench trial before the undersigned on July 21, 1981 and after consideration of the parties' legal memoranda, the matter is now ripe for decision.

## FINDINGS OF FACT

1. Plaintiff, Franklin Associates, is a Pennsylvania Limited Partnership with its principal place of business at 16 North Franklin Street, Doylestown, Pa.

2. Defendant, F-M Oil Company, Inc., is a Pennsylvania corporation with its principal place of business at Route 463, M.R. 1, Lansdale, Pa.

3. Defendant, Robert J. Finney, deceased, was an individual employed by defendant, F-M Company, Inc., as its president at all times relevant hereto.

4. Prior to November 30, 1976, defendant, F-M Oil Company, Inc., was the owner of certain real property being County Parcel No. 8-4-97 situate on the northwest corner of State and Franklin Streets in the Borough of Doylestown, Bucks County, Pa.

5. Sometime before August 1, 1968, defendant F-M entered into an agreement with Harnik whereby Harnik agreed to purchase certain petroleum products from F-M. That agreement covered the period commencing August 1, 1968 through July 1, 1969, and was to continue thereafter from year to year, provided that Harnik could terminate the purchasing agreement by providing F-M with 90 days' written notice and F-M could terminate at any time by giving five days written notice to Harnik.

6. On or about July 6, 1976, defendant F-M entered into an agreement of sale with one John David Stitzer, or his nominee, for the aforementioned State and Franklin Streets premises for the agreed consideration of $135,000. Subsequent to execution of that agreement of sale it was assigned to plaintiff.

7. Settlement pursuant to the aforesaid agreement of sale between plaintiff and corporate defendant was to occur on or before November 30, 1976.

8. Plaintiff was aware of the lease agreement between corporate defendant and its tenant, Harnik, at the time the agreement of sale was assigned by John David Stitzer, to plaintiff.

9. Plaintiff was aware that possession of the premises would not be delivered upon settlement with corporate defendant.

10. Plaintiff decided to proceed with the agreement of sale notwithstanding the existence of the lease between Harnik and corporate defendant and

the provision in plaintiff's (as assignee) agreement of sale providing for possession of the premises at settlement.

11. Settlement between plaintiff and defendant, F-M occurred on November 29, 1976.

12. At the time of settlement plaintiff was unaware of the existence of the aforementioned petroleum products sales agreement between defendant F-M and its tenant, Harnik.

13. At the time of settlement an agreement was entered into by and between F-M and plaintiff, wherein F-M warranted that the Harnik lease was the only lease agreement then in effect concerning the subject premises, and that it was terminable at the end of the current term upon 30 days' written notice to the tenant. F-M further warranted therein that there were no other agreements, either written or oral, in existence between F-M and Harnik which "may prevent or interfere with Seller's right to terminate the lease, as aforesaid." Also included in that agreement was a committment by F-M to ". . . save and hold harmless Buyer from any loss incurred by reason of any lease not herein specified or any misrepresentation herein contained."

14. On February 18, 1977 the tenant, Harnik, was given notice that plaintiff did not intend to renew his lease at the end of the then-current term. However, Harnik failed and refused to surrender the premises at the end of that term on July 31, 1978.

15. Plaintiff instituted ejectment proceedings against Harnik, wherein F-M was joined as an additional defendant. That action was called for trial in the Court of Common Pleas of Bucks County but never proceeded to a verdict, because the parties negotiated among themselves.

16. On or about June 15, 1978, F-M and Harnik

entered into a settlement agreement whereby Harnik agreed to phase out his occupancy of the premises and to release Franklin and F-M from all further liability to him, waiving any rights and benefits to which he may have entitled under the Gasoline, Petroleum Products and Motor Vehicle Accessories Act. In consideration for his said agreement and releases F-M and Franklin agreed to pay to Harnik certain designated sums of moneys.

## CONCLUSIONS OF LAW

1. The Gasoline, Petroleum Products and Motor Vehicle Accessories Act of November 26, 1975, P.L. 454, 73 P.S. §202-1 et seq., is inapplicable to the lease relationship which existed between defendant F-M and its tenant, Harnik, and no franchise agreement as contemplated under that act existed between those parties.

2. Defendant Robert J. Finney at all times relevant to this proceeding acted in his capacity as a corporate officer and, therefore, incurred no personal liability for any acts undertaken by him, and plaintiff has failed to prove that defendant Finney made any misrepresentations of material fact to plaintiff. Defendants did not in any way breach the November 30, 1976 settlement agreement, and plaintiff is not entitled to any recovery against defendants on the basis of that agreement.

3. Plaintiff is not entitled to recover damages from any defendants as a result of representations made by those defendants.

## DISCUSSION

The controlling issue here is whether or not there was in existence at the time the parties entered into

the agreement for sale of the subject real estate a franchisor-franchisee relationship between defendants F-M and Harnik. Here, there were two pertinent, mutually exclusive relationships in existence between F-M and Harnik. There was a lease agreement defining the terms and conditions of Harnik's occupancy of the service station premises, and there was a totally separate and independent agreement between those two parties providing for sale and purchase of gasoline and other petroleum products by Harnik from F-M. Plaintiff would have us conclude that those two separate agreements must be construed together and they are interwoven in such a way as to establish the existence of a franchise relationship which is entitled to special protection under the Gasoline Act. However, we are not led to that conclusion, because we do not find that the relationship between F-M and Harnik was of the type intended to be protected under that act.

The leading case construing the impact of the Gasoline Act is Atlantic Richfield Company v. Razumic, 480 Pa. 366, 390 A. 2d 736 (1978), wherein our Supreme Court held that various particular incidents of the relationship between the petroleum supplier-lessor and service station-lessee established that their relationship could in fact be one of franchisor-franchisee. There, the lessor maintained extensive control of the lessee's business practices, the lessee's use of the demised premises, the hours of lessee's business operations, and other day-to-day aspects of the operation of the service station. Atlantic Richfield had the right to enter the premises to determine the lessee's degree of compliance with the lease, to audit the lessee's books and records pertaining to sale of fuels, and to exercise specified controls pertaining to the dealer's compliance with various lease terms, keeping

of books and records as to sale of fuels, use of trademarks and tradenames, and other related supervisory restrictions over daily operations. There, the supplier could even go so far as to dictate the hours of the station's operation and dealer was required to furnish his employes with uniforms bearing company insignia, at the dealer's own expense.

In Witmer v. Exxon Corp., 260 Pa. Superior Ct. 537, 394 A. 2d 1276, (1978) similar rather stringent controls existed in favor of the lessor-supplier. The service station dealer was licensed to use Exxon's trademarks, and was subject to that company's quality control over those products sold. The supplier maintained a right to inspect the premises, limited the products which could be sold there, and, as in the Razumic case, controlled the days and hours during which the station could be operated and had the right of supervision over virtually every significant aspect of the dealer's day-to-day operations.

Here, the relationship between F-M and Harnik is in marked contrast to those found in the Razumic and Witmer cases to have constituted franchise agreements. All that exists here is the combination of an agreement to use certain real estate for a designated purpose, along with a non-restrictive agreement to furnish petroleum supplies to be utilized at that same location. We are well aware that if parties to a writing captioned in the manner in which suggests nothing more than the existence of a landlord and tenant relationship, the incidents of that relationship can nevertheless be examined by a court to determine whether in fact the writing actually embodies the greater commitment in the nature of a franchise agreement: Kowatch v. Atlantic Richfield Company, 480 Pa. 388, 390 A. 2d 747

(1978). However, the record before us in this case certainly does not demonstrate the existence of controls or restrictions on the lessee's activities and operations such as would entitle him to the greater protection which the Gasoline Act was intended to afford to a franchisee.

Furthermore, even if we were led to the conclusion that a franchise agreement had existed here, we believe the express language of the act would allow recovery of possession of the service station premises. The act provides at §202-3(b)(4):

"(b) It shall be a violation of this act for any lessor supplier to directly or indirectly terminate, cancel or fail to renew an agreement with the lessee dealer unless the termination, cancellation or failure to renew is for one of the following reasons:

(4) The lessor supplier has lost its right to grant possession of the premises."

Furthermore, termination is not prohibited "where there is such cause for termination as a court of competent jurisdiction might find to be reasonable and just under all of the circumstances." Gasoline Act, §202-3(c)(3).

Every day common sense would dictate that there must be a unity of the right to control use of the premises and the right to control sales of supplies in order to conclude that a franchise relationship exists within the meaning of the aforementioned cases. It follows that where those elements become separated, whether through sale of the real estate as occurred here, or otherwise, there would likewise be a severance of those elements which make up a franchise relationship. To hold contrary would be to determine that the Gasoline Act was intended by our legislature to preclude a free transfer of property for a good and

legitimate business reason. The conveyance here by F-M to plaintiff we find to be quite analogous to that in Vercheak v. Redevelopment Authority of Washington County, 44 Pa. Commonwealth Ct. 481, 405 A. 2d 559, (1979), which held that a service station operator's rights with respect to the year-to-year lease which he enjoyed were extinguished when the leased property was condemned by a county redevelopment authority.

In its simplest form, plaintiff's principal argument is that it was somehow duped through misrepresentations by F-M and Harnik into entering into this commercial transaction. However, we find no evidence in this record of any affirmative fraud or misrepresentation on the part of any defendant, and we cannot believe that plaintiff was either unaware of the existence of the relevant provisions of the Gasoline Act or in any way prevented from pursuing a further course of questioning and investigation to determine whether the tenant claimed or was entitled to any of the special protection provided thereby. In short, if plaintiff was not aware of the facts or the law which controlled this transaction, we believe it should have been.

In a last-ditch effort to mitigate its financial losses plaintiff askes us to construe the agreements entered into between the parties dated November 30, 1976 and June 15, 1978 as being a general indemnification. That we cannot do, because we find manifested in those documents no evidence of anyone's intention to subject defendants to responsibility lessee Harnik's having taken a legally untenable position, uncoerced and unanticipated by defendants of any one of them, which resulted in a detriment to plaintiff. F-M obviously never intended to hold Franklin harmless as against any loss incurred by reason of the lessee's unreasonable and unforeseeable conduct.

It follows, of course, that where no legal wrong has occurred plaintiff is not entitled to the money damages which it seeks.

## ORDER

And now, December 30, 1981, the decision is rendered in favor of defendants and against plaintiff.

This decision shall be forthwith filed in the office of the prothonotary of this county and the prothonotary shall forthwith notify the parties or the attorneys of the respective parties of the date of the filing of the decision.

The prothonotary shall, on praecipe, enter final judgment on this decision if no exceptions have been filed within ten days after notice of the filing of this decision has been given.